## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGINIA CARAZANI<br>c/o 1099 New York Avenue, NW, Suite 900<br>Washington, DC  20001<br><br>           Plaintiff,<br><br>           v.<br><br>EMMA ZEGARRA,<br>9632 Masterworks Drive<br>Vienna, VA  22181<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Virginia Carazani files this Complaint against Defendant Emma Zegarra and alleges as follows:

### PRELIMINARY STATEMENT

1.     Plaintiff Virginia Carazani (hereinafter "Ms. Carazani" or "Plaintiff") was trafficked into the United States for forced labor by Emma Zegarra ("Zegarra" or the "Defendant"), a World Bank employee.

2.     Zegarra lured Ms. Carazani from her home in Bolivia to the United States. Zegarra  provided a contract, which promised reasonable working conditions and decent pay. However, once Ms. Carazani arrived in the United States, Zegarra completely disregarded  the contract.  Zegarra forced Ms. Carazani to work around the clock, seven days a week.  Zegarra paid Ms. Carazani nothing.

3.     Zegarra held Ms. Carazani as a virtual prisoner in the Zegarra home for three years.  Ms. Carazani remained trapped in forced labor, unable to escape.

4.     Zegarra subjected Ms. Carazani to verbal and psychological abuse.  Ms. Carazani faced constant threats of deportation back to Bolivia.

5.     In 2009, Ms. Carazani escaped from the Zegarra home with the assistance of a Good Samaritan and an agent of the Federal Bureau of Investigation.

6.     Zegarra's acts violated international, federal, and state law, including the Trafficking Victims Protection Act and its subsequent reauthorizations.

7.     In 2011, the Department of Homeland Security issued a T-visa to Ms. Carazani, a type of visa reserved for victims of human trafficking exploited in the United States.

8.     Ms. Carazani seeks damages, including restitution for three years of unpaid wages, liquidated damages, compensation for harm suffered as a trafficking victim, and damages for various state-law torts.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 18 U.S.C. 1595, and 29 U.S.C. § 216(b).  This Court has supplemental jurisdiction over Ms. Carazani's state-law claims pursuant to 28 U.S.C. § 1367.  This Court has jurisdiction over Ms. Carazani's international-law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(d) because the Defendant is a citizen of a foreign state.

## PARTIES

10.     Plaintiff Virginia Carazani is a 35-year-old citizen of Bolivia, currently residing in the United States on a T-visa.  At the time of the events that give rise to this Complaint, Ms. Carazani was legally residing in the United States under a G-5 non-immigrant visa, which had been obtained by the Defendant.

2

11.     At all times relevant hereto, Defendant Emma Zegarra worked as an economist for the World Bank in Washington, D.C.  Zegarra is a citizen of Bolivia and Germany.

## FACTUAL ALLEGATIONS

### *Employment with Zegarra in Bolivia*

12.     In 1998, while living in Bolivia, Ms. Carazani learned of a position as a live-in maid and nanny for the Defendant, Emma Zegarra.

13.     Ms. Carazani began working for Zegarra in Bolivia, caring for Zegarra's two children, then 3 and 6 years old.  Ms. Carazani did all of the cleaning and laundry, cooked meals, and performed other domestic chores for the Zegarra family.

14.     Ms. Carazani worked for Zegarra for eight years in Bolivia.  Zegarra paid Ms. Carazani the agreed-upon salary of $100 per month.  Zegarra and Ms. Carazani had an amicable employer-employee relationship in Bolivia.

### *Zegarra Lures Ms. Carazani to the United States for Forced Labor*

15.     In 2006, Zegarra accepted a job working at the World Bank in the United States. Zegarra asked Ms. Carazani to continue working for the family in the United States.  Zegarra told  Ms. Carazani that her own young son could accompany her to the United States.

16.     Ms. Carazani accepted Zegarra's request to work for Zegarra in the United States as a domestic worker.  Before departing for the United States, Zegarra and Ms. Carazani signed an employment contact that set forth the terms of Ms. Carazani's proposed employment.

17.     The contract included a salary of $7 per hour; a 5.5 day per week work schedule; duties as a domestic worker and nanny;  health insurance coverage for Ms. Carazani and her son; social security benefits; overtime; vacation time and sick leave; and food and shelter at the Zegarra home.

18.     On the basis of this executed contract, Ms. Carazani received a G-5 visa from the U.S. Embassy in La Paz to come to the United States.  Her young son also received a visa to come to the United States as his mother's dependent.

19.     On December 24, 2006, after executing the employment contract, Zegarra, her two daughters, Ms. Carazani, and Ms. Carazani's son traveled to the United States.

20.     Upon information and belief, Zegarra never intended to honor the employment contract.  She provided the contract to Ms. Carazani with the sole purpose of fraudulently obtaining a G-5 visa for Ms. Carazani to come to the United States as a domestic worker.

### *Zegarra Holds Ms. Carazani in Forced Labor in the United States.*

21.     From December 2006 until December 2009, Zegarra forced Ms. Carazani to work as a domestic servant and nanny in her home without pay.   Ms. Carazani worked seventy-five hours each week, seven days a week.  She received no salary at all.

22.     Immediately upon Ms. Carazani's arrival in the United States, the Defendant confiscated Ms. Carazani's passport and papers, as well as the legal documents for her minor son.  Ms. Carazani was unable to leave Zegarra's home without passports for herself or her son.

23.     Although she did not pay her, Zegarra told Ms. Carazani that she was responsible for all of the household labor: cleaning the house, preparing meals for the Defendant and the Defendant's two minor children, working as a nanny for the Defendant's children, washing the clothing, and ironing all the linens and clothing.

24.     In the entire three year period, Zegarra never paid Ms. Carazani.  All the work that Ms. Carazani performed in Zegarra's home was uncompensated, forced labor.

25.     For the three years that she was held in involuntary servitude in the Zegarra home, Ms. Carazani received no vacation time, no sick days, and no time off.

4

26.     Ms. Carazani received no health insurance or coverage for any medical expenses, although this was promised in her employment contract.  When Ms. Carazani fell ill, Zegarra dropped her off alone at an emergency room.  When the hospital bills arrived, Zegarra forced Ms. Carazani to request money from her own family members to cover the bills.

***Zegarra Isolates Ms. Carazani from the Outside World, Threatening Her with Deportation***

27.     The Defendant isolated Ms. Carazani, who spoke only Spanish.  Zegarra warned Ms. Carazani not to talk to anyone outside the house.

28.     The Defendant threatened to deport Ms. Carazani and her son if she ever told anyone that she was not getting paid.

29.     In an effort to terrify Ms. Carazani, the Defendant told Ms. Carazani that a device in her World Bank office allowed Zegarra to listen to Ms. Carazani's phone conversations in the home. The belief that all of her telephone calls were monitored prevented Ms. Carazani from telling her family about the abuse she was suffering in the United States.  By instilling fear in Ms. Carazani, the Defendant kept Ms. Carazani isolated from the outside world. Ms. Carazani was unable to tell anyone that she was being held in forced labor.

30.     Both Zegarra and Zegarra's eldest daughter frequently threatened Ms. Carazani with deportation. Ms. Carazani believed that if she did not continue working for Zegarra, she would be deported to Bolivia with no money and no job and no place to live, and Zegarra's threats exploited this belief.

31.     Ms. Carazani was forced to work approximately 75 hours each week in the United States.  She cooked, cleaned the entire house, ironed, cared for Zegarra's adolescent children, did laundry, and hand-washed the dishes after each meal.

5

32.     Ms. Carazani rose early in the morning each day to start her duties.  Zegarra did not permit her to take rests or breaks during the workday.

### *Zegarra and Her Daughter Abuse and Humiliate Ms. Carazani*

33.     Both Zegarra and Zegarra's eldest daughter subjected Ms. Carazani to verbal and psychological abuse.

34.     Zegarra told Ms. Carazani that she was "worthless," "a disaster," "stupid," and "irresponsible."

35.     Zegarra, when angry, would scream, throw plates and slam doors.  Zegarra routinely became enraged when Ms. Carazani asked for her wages.

36.     Zegarra's eldest adolescent daughter also verbally abused Ms. Carazani.

37.     Ms. Carazani was treated harshly, was made to feel like an inferior human being, and suffered high levels of anxiety as a result.

38.     Ms. Carazani suffered psychological trauma and depression.  She considered suicide.

### *Zegarra Commits Fraud Against Ms. Carazani*

39.     As required by World Bank rules, Zegarra opened and maintained a bank account for Ms. Carazani in the United States, naming herself as the primary account holder with Ms. Carazani as a secondary account holder.  Zegarra told Ms. Carazani that she would deposit Ms. Carazani's salary in this bank account on a regular basis.

40.     Contrary to these written and verbal promises, Zegarra did not ever pay Ms. Carazani.

41.     Zegarra did not put Ms. Carazani's salary into the bank account as promised.  In fact, throughout the duration of Ms. Carazani's employment, Zegarra deposited a total of $8.50 in Ms. Carazani's bank account.

42.     When Ms. Carazani asked why she was not being paid, Zegarra told Ms. Carazani that she did not have enough money to pay her.  Zegarra accused Ms. Carazani of being "greedy."

43.     Zegarra similarly failed to pay employment taxes for Ms. Carazani, as she was legally required to do.  Because of this failure, Zegarra could not provide the documentation required to renew Ms. Carazani's visa in 2008.  Zegarra's fraud forced Ms. Carazani into an illegal immigration status, making her even more vulnerable to abuse.

44.     Zegarra used fraud, abuse, threats of deportation, and deceit to force Ms. Carazani to continue working for her without pay.

## COUNT ONE

### Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1590, 1595

45.     Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46.     By transporting Ms. Carazani to the United States and, upon arrival, harboring her in the Zegarra home for the purpose of subjecting Ms. Carazani to forced labor, the Defendant engaged in trafficking of Ms. Carazani in violation of 18 U.S.C. § 1590.

47.     Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

48.     As a direct and proximate result of the Defendant's actions, Ms. Carazani has sustained damages, including physical and mental injury, emotional distress, and economic losses.

49.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

50.     Defendant's conduct was extreme and outrageous.

51.     Because of the willful, wanton, and malicious nature of Defendant's actions, the law entitles Ms. Carazani to punitive damages.

## COUNT TWO

**Forced Labor Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. § 1589**

52.     Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

53.     The Defendant knowingly obtained Ms. Carazani's labor and services through a scheme and pattern of abusive behavior intended to cause Ms. Carazani to believe that if she did not perform those services, she or another person would suffer serious harm, as described by the forced labor provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

54.     The Defendant knowingly obtained Ms. Carazani's labor and services through threatened abuse of legal process as described by the forced labor provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

55.     Ms. Carazani brings these claims pursuant to the civil cause of action for victims of forced labor in 18 U.S.C. § 1595.

56.     As a direct and proximate result of Defendant's actions, Ms. Carazani has sustained damages, including physical and mental injury, economic loss, and emotional distress.

57.    Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

58.    Defendant's conduct was extreme and outrageous.

59.    Because of the willful, wanton, and malicious nature of Defendant's actions, the law entitles Ms. Carazani to punitive damages.

**COUNT THREE**

**Federal Minimum Wage**
**The Fair Labor Standards Act ("FLSA")**
**(29 U.S.C. §§ 201 *et seq.*)**

60.    Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.    The Defendant employed Ms. Carazani within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(e).

62.    The Defendant willfully failed to pay Ms. Carazani statutory minimum wages—or any wages—in violation of 29 U.S.C. § 206(a) and regulations of the United States Department of Labor.

63.    At all times relevant hereto, the relationship between the Defendant and Ms. Carazani was one of private master and servant.

64.    Zegarra knew, or should have known, about FLSA minimum wage provisions applicable to an employee holding a G-5 visa and working in her home.  Defendant willfully, intentionally, and without good faith violated FLSA.

65.    The Defendant's willful violation of the Fair Labor Standards Act entitles Ms. Carazani to recovery of her unpaid minimum wages, an equal amount as liquidated damages, and

reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. §§ 201 *et seq.* and United States Department of Labor regulations, in addition to declaratory relief.

## COUNT FOUR

### Breach of Contract

66.     Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

67.     Ms. Carazani and Zegarra entered into an employment agreement in 2006, whereby Ms. Carazani agreed to work for the Defendant as a domestic servant and Zegarra agreed to pay Ms. Carazani $7.00 per hour for a 40-hour workweek.  Zegarra also contracted to provide Ms. Carazani with paid days off for holidays, vacation, and medical insurance.  Zegarra agreed to pay required payroll taxes.

68.     Zegarra intentionally and willfully failed and refused to pay Ms. Carazani the wages promised in her contract.

69.     Other than when she was hospitalized, Ms. Carazani was never given any days off—including weekend days.  She was forced to work hours well in excess of a 40-hour workweek.  Zegarra intentionally and willfully failed to provide medical insurance or to pay any required taxes.

70.     Zegarra refused to pay Ms. Carazani any of  wages promised in her contract. Zegarra failed to provide the conditions and benefits promised in the contract.

71.     Zegarra's conduct evidenced a conscious and deliberate disregard for the interests of others.  Her conduct may be called willful or wanton.  Her acts have the outrageous character frequently associated with criminal conduct.

72.     At all times relevant hereto, the relationship between the Defendant and Ms. Carazani was one of private master and servant.

73.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## COUNT FIVE

### Unjust Enrichment

74.     Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

75.     Ms. Carazani rendered services as a live-in domestic servant to the Defendant in good faith and with the expectation that she would be fairly compensated for such services.

76.     The Defendant accepted these services and in turn failed to compensate Ms. Carazani for the fair market value of her services.

77.     The Defendant has been unjustly enriched at Ms. Carazani's expense.

78.     At all times relevant hereto, the relationship between the Defendant and Ms. Carazani was one of private master and servant.

79.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## COUNT SIX

### Fraud/Fraudulent Inducement

80.     Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

81.     Upon information and belief, Zegarra intentionally and knowingly misrepresented to Ms. Carazani the conditions of her employment and conditions in the United States.

82.     Zegarra never intended to follow through, and did not follow through, on her promises to Ms. Carazani.  Zegarra did not intend to pay Ms. Carazani, did not intend to provide medical insurance, did not intend to pay Ms. Carazani's taxes, and did not intend to help Ms. Carazani renew her visa.  Instead, Zegarra planned to force, and did force, Ms. Carazani to work long hours, seven days a week, for herself and her children without any compensation.

83.     Zegarra caused Ms. Carazani to believe that Zegarra was holding funds for her in a bank account, when in reality Zegarra only deposited $8.50 in the bank account.

84.     Zegarra made these false representations to induce Ms. Carazani to come to the United States and to convince the U.S. Embassy in La Paz to issue a G-5 visa to Ms. Carazani.

85.      Zegarra was aware of the falsity of these misrepresentations, and made them with the intention that Ms. Carazani and others would rely on these false statements.  Zegarra sought to entice Ms. Carazani to travel to the United States and to force her to work in her household.

86.     Ms. Carazani did in fact rely on Zegarra's misrepresentations to her detriment and, as a result, Ms. Carazani was forced to work as a domestic worker for the Defendant without pay.

87.     Zegarra made the foregoing misrepresentations with a conscious and deliberate disregard for the interests of others.  Her conduct may be called willful or wanton.  And her conduct has the outrageous character frequently associated with criminal conduct.

88.     As a result of the Defendant's fraudulent inducement and outright fraud, Ms. Carazani has suffered great economic, emotional, and physical harm.

12

89.    As a direct and proximate result of these actions, Ms. Carazani has sustained physical, emotional, and economic damages.

90.    Plaintiff is therefore entitled to recover these damages in an amount to be proven at trial, including attorneys' fees.

## COUNT SEVEN
### Negligent Infliction of Emotional Distress

91.    Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

92.    The Defendant engaged in negligent conduct toward Ms. Carazani, causing her to suffer severe emotional distress.

93.    The Defendant owed a duty to Ms. Carazani as an employer.  Unfamiliar with U.S. customs and institutions and unable to speak English, Ms. Carazani relied on the Defendant for access to medical care, shelter, and food.  In addition, because Ms. Carazani arrived in the United States on a G-5 visa, her immigration status was entirely dependent upon her employer. Defendant breached that duty.

94.    As a proximate result of the Defendant's conduct, Ms. Carazani has suffered and will continue to suffer extreme emotional distress.

95.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## COUNT EIGHT

### Intentional Infliction of Emotional Distress

96.    Ms. Carazani realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

13

97.     Zegarra intentionally and cruelly misrepresented to Ms. Carazani what her life would be once she moved to the United States.

98.     On a daily basis, Zegarra used her position of power and control over Ms. Carazani to engage in an intentional pattern of damaging verbal and psychological abuse against her.

99.     Aware of Ms. Carazani's sense of isolation and distress, Zegarra repeatedly, outrageously, and intentionally prevented Ms. Carazani from forming friendships or making any contacts.  Rather, Ms. Carazani was forbidden from interacting with other individuals, thereby deepening her suffering and isolation.

100.    Zegarra tricked Ms. Carazani into believing that all phone calls were remotely monitored.  Zegarra convinced Ms. Carazani that Zegarra or her daughters could and would listen to any phone call she made.

101.    As a result of Zegarra's conduct, Ms. Carazani has suffered and will continue to suffer extreme emotional distress.

102.    Ms. Carazani is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## JURY DEMAND

103.    Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that judgment be granted as follows:

(a)     Money damages for each Count;

(b)     Punitive and exemplary damages according to proof;

(c)     Attorneys' fees and costs for Plaintiff against the Defendant; and

(d)     Such other further relief as the Court may deem just and proper.


Respectfully submitted,

Dated:  January 23, 2012

By: _____
Julie M. Carpenter
(DC Bar No. 418768)
Carrie F. Apfel
(DC Bar No. 974342)
JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, D.C. 20001
(v) 202-639-6000
(f) 202-639-6066
jcarpenter@jenner.com
capfel@jenner.com

*Counsel for Virginia Carazani*