IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIRGINIA CARAZANI ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EMMA ZEGARRA ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 12-107 (RC) <br><br> JURY DEMANDED |

## SUPPLEMENT TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT EMMA ZEGARRA

Pursuant to the Court's December 17, 2012, Minute Order, Plaintiff Virginia Carazani submits the attached Proposed Order on Plaintiff's Motion for Default Judgment and supporting exhibits.

A default establishes the liability of a defendant, who is deemed to admit every well-pleaded allegation in the complaint. *Flynn v. Mastro Masonry Contractors,* 237 F.Supp.2d 66, 69 (D.D.C. 2002). In determining the sum to be awarded, the Court may rely upon detailed affidavits or other documentary evidence. *Id.* The attached exhibits provide the Court with documentation for total damages of $565,179.21 as discussed below.

**I.      Breach of Contract: Defendant Owes Plaintiff $128,247.95 in Unpaid Wages.**

The employment contract between Plaintiff and Defendant established that Defendant would employ Plaintiff as a housekeeper and pay her the greater of $7.08 per hour or the applicable prevailing wage under U.S. State Department guidelines for the first 40 hours worked each week. (Contract § 5, attached as Exhibit A; Declaration of Virginia Carazani ¶¶ 6, 30, 33,

attached as Exhibit B.)  Because Plaintiff had worked for eight years in Bolivia and three years in the United States as Defendant's housekeeper and had sole responsibility for household chores in Defendant's home, Plaintiff should be classified as a Level Two Housekeeper.  (*See* Employment and Training Administration, Prevailing Wage Determination Policy Guidance, attached as Exhibit C, at 7 (defining Level Two wage rates as belonging to "qualified employees who have attained, either through education or experience, a good understanding of the occupation" as opposed to Level One rates, which belong to "beginning level employees who have only a basic understanding of the occupation"); Exhibit B ¶¶ 17, 19-27.)  During the period of Plaintiff's labor for Defendant, the Government's prevailing wage for Level Two Housekeepers ranged from $8.74 to $9.80 per hour.  (*See* Wage Tabulation, attached as Exhibit D; Prevailing Wage Rates for Housekeepers, attached as Exhibit E.)  The contract specified that, for every hour worked beyond 40 each week, Defendant would pay Plaintiff overtime wages as required by state law. (Exhibit A § 6; Exhibit B ¶¶ 29-30.)  Because the Commonwealth of Virginia does not have its own overtime laws, Federal overtime law applies, which provides for 1.5 times the minimum wage or the employee's regular hourly wage, whichever is greater.  29 U.S.C. § 207(a), (l).  The contract entitled Plaintiff to four paid holidays per year,[1] five paid sick days per year, and fifteen paid vacation days per year.  (Exhibit A § 4; Exhibit B ¶¶ 29-30.)  The contract obliged the Defendant to pay the employer's share of Social Security taxes and employer's share of all other required taxes or contributions.  (Exhibit A § 7; Exhibit B ¶ 33.)

---

[1] The English section of the contract is followed by a Spanish translation.  Although the English section does not state whether the holidays were to be paid or unpaid, the Spanish section specifies that the holidays were to be paid ("*Número de Feriados pagados:  cuatro (4)*," *i.e*., "Number of paid holidays: four (4)").

Plaintiff worked from December 24, 2006, until December 11, 2009, as both a housekeeper and nanny for Defendant's children.  (Am. Compl. ¶¶ 21, 23; Exhibit B ¶¶ 3-4, 15.)  Plaintiff worked approximately 75 hours per week, every week, for the first year; approximately 68 hours per week, every week, for the second year; and approximately 66 hours per week, every week, for the third year.  (Am. Compl. ¶ 31 & n.2; Exhibit B ¶ 40.)  During those three years, Plaintiff received no vacation time, no paid sick days, and no holidays.  (Am. Compl. ¶ 25; Exhibit B ¶ 40.)   The only days that Plaintiff did not work were the four days she spent in the hospital in February 2008.  (Exhibit B ¶ 67.)  Defendant did not pay the employer's share of Plaintiff's employment taxes.[2]  (Am. Compl. ¶ 44; Exhibit B ¶ 77.)   Defendant did not provide health insurance or other medical coverage for Plaintiff and forced Plaintiff to request outside help to cover her medical bills.  (Am. Compl. ¶ 26; Exhibit B ¶¶ 10; 52-58.)  For the duration of Plaintiff's employment, Defendant paid her nothing except the $8.50 necessary to keep Plaintiff's bank account open.  (Am. Compl. ¶ 41; Exhibit B ¶ 53.)

Plaintiff's total accumulated wages for the period of the contract were $121,854.21.  (Exhibit D.)[3]  Defendant owes Plaintiff an additional $6,402.24 for the 57 withheld holiday and vacation days.  (Am. Compl. ¶ 25; Exhibit A § 4; Exhibit B ¶ 40.)   The amount due for holidays and vacation days is calculated for eight hours a day, at $14.04 per hour (which is 1.5 times $9.36, the arithmetic average of Plaintiff's prevailing wage over the three years).  Time-and-a-half is appropriate because Plaintiff never worked fewer than 40 hours in any given week.  (*See*

---

[2] Because the Internal Revenue Service has not penalized Plaintiff and because Plaintiff cannot calculate damages to her future Social Security benefits, Plaintiff does not claim damages for Defendant's breach of the duty to pay taxes.

[3] Exhibit D adjusts hours worked downward to eight hours per day for four days in the week of Feb. 10, 2008, to account for the four days of Plaintiff's hospitalization, which the contract guaranteed as paid sick days.

Exhibit D.) After deducting $8.50 for Defendant's one-time deposit to Plaintiff's account, Defendant owes Plaintiff $128,247.95 in unpaid wages, overtime, and withheld holidays and vacation time.

### II. Breach of Contract: Defendant Owes Plaintiff $3,731.26 for Medical Expenses.

The contract required Defendant to pay for medical insurance both for Plaintiff (Exhibit A § 9; Exhibit B ¶ 10) and for the son whom she brought as a dependent (Exhibit A § 10). Defendant did not provide any medical insurance. (Am. Compl. ¶ 26; Exhibit B ¶ 10.) Nor did Defendant pay for any of Plaintiff's medical expenses. (Am. Compl. ¶ 26; Exhibit B ¶ 40.) During the period of the contract, Plaintiff was charged $35,849.33 in medical expenses for herself and her son. (*See* Medical Expenses, attached as Exhibit F; Exhibit B ¶¶ 52, 67.) Deducting the amounts forgiven by the healthcare providers or donated by charities, family, friends, or Plaintiff's church, Plaintiff either paid or continues to owe $3,731.26 for incurred medical expenses that Defendant's breach of contract prevented from being covered by insurance. (*See* Exhibit F.)

### III. Fair Labor Standards Act: Defendant Owes Plaintiff $102,606.21 in Liquidated Damages.

The Fair Labor Standards Act ("FLSA") provides in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).[4]

---

[4] Both the FLSA and the Trafficking Victims Protection Act entitle Plaintiff to recover reasonable attorneys' fees and the costs of bringing this action. 29 U.S.C. § 216(b); 18 U.S.C. § 1595(a). However, given Defendant's absence from the case and uncertainty as to whether she will attempt to resume

Defendant employed Plaintiff within the meaning of the FLSA.  (Am. Compl. ¶ 61.) Defendant willfully, intentionally, and without good faith violated section 206 of the FLSA by willfully failing to pay Plaintiff any wages.  (Am. Compl. §§ 62-65; Exhibit B ¶¶ 44-46, 53-54, 64, 89-92.)  As detailed above in Plaintiff's claim for lost wages under breach of contract, Defendant also failed to pay Plaintiff overtime compensation, in violation of section 207 of the FLSA.  Under the FLSA, Plaintiff's unpaid minimum wages,[5] including overtime compensation, totaled $102,606.21.  (Exhibit D.)  Therefore, in addition to wages due, Defendant owes Plaintiff $102,606.21 in FLSA liquidated damages.

### IV.   Trafficking Victims Protection Act of 2000:  Plaintiff Claims $433,200 in Emotional Damages and Requests $565,179.21 in Punitive Damages.

The Trafficking Victims Protection Act of 2000 ("TVPA"), as amended, provides in pertinent part:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Damages are to account for the *full* value of the victim's losses and include:  medical services; necessary transportation, temporary housing, and childcare expenses; lost income; attorneys' fees and other costs incurred; other losses suffered as a proximate result of the

---

litigation later, Plaintiff is not submitting a claim for attorneys' fees.  However, Plaintiff respectfully reserves the right to submit a calculation of legal fees and costs of the action after the Court has entered judgment.

[5] Because the FLSA guarantees compensation only at the minimum wage and not the higher prevailing wage set in the contract, the base wages for purposes of calculating liquidated damages are less than the amount claimed as wages due under the contract.  However, the FLSA guarantees *overtime compensation* at "not less than one and one-half times *the regular rate* at which [the employee] is employed."  29 U.S.C. § 207(a) (emphasis added).  Thus, the overtime amount due is the same both under the contract and under the FLSA.

offense; and the greater of the value of the victim's services or the guaranteed minimum wage and overtime guarantees of the FLSA.  *Doe v. Howard*, 2012 U.S. Dist. LEXIS 125414, *10 (E.D. Va. Sept. 4, 2012).

Emotional distress damages are among the actual damages recoverable in a private cause of action under the TVPA.  *Gurung v. Malhotra*, 2012 U.S. Dist. LEXIS 40970, *23-25 (S.D.N.Y. Feb. 21, 2012); *Mazengo v. Mzengi*, 2007 U.S. Dist. LEXIS 99377, *23-24 (D.D.C. Dec. 20, 2007).  "In recent cases, Courts have ordered or affirmed emotional distress damages relating to forced domestic labor of trafficking victims ranging from $415 to $800 for each day of forced labor."  *Doe*, 2012 U.S. Dist. LEXIS 125414, at *6.

Punitive damages are also available in actions brought under 18 U.S.C. § 1595 for violations of the TVPA.  *Ditullio v. Boehm*, 662 F.3d 1091, 1098 (9th Cir. 2011).  Awards of punitive damages should be based on "the degree of reprehensibility of the defendant's conduct . . . and should reflect the enormity of [the defendant's] offense."  *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996) (internal quotations omitted); *see also Shukla v. Sharma*, 2012 WL 481796, *16 (E.D.N.Y. Feb. 14, 2012) (finding a 1:1 ratio of punitive to compensatory damages comports with due process where TVPA defendants were persons "of modest means").

Defendant trafficked Plaintiff into the United States and forced her into labor in violation of the TVPA.  (Am. Compl. ¶¶ 45-59; Exhibit B ¶¶ 3-17, 106.)  Recognizing that Plaintiff is a "victim of a severe form of trafficking," the Government has issued Plaintiff a T-Visa, which is reserved for "victims of severe forms of trafficking in persons."  (*See* 8 C.F.R. § 214.11; T-Visa Notice of Action, attached as Exhibit G.)  As a result of Defendant's trafficking her and forcing her into involuntary labor, Plaintiff suffered physical and mental injury, economic loss, and emotional distress.  (Am. Compl. ¶ 56.)  Only to the extent that the Court has not awarded

Plaintiff lost wages and medical expenses detailed above as breach of contract damages, Plaintiff claims them as TVPA damages.[6]

By trafficking Plaintiff, forcing her into involuntary labor, isolating her from other human beings, restricting her communication, and psychologically abusing her, Defendant traumatized, depressed, and even drove Plaintiff to consider suicide.  (Am. Compl. ¶ 38; Exhibit B ¶¶ 37-83, 105).  Defendant's infliction of emotional distress was intentional, cruel, repeated, outrageous, and abusive.  (Am. Compl. ¶¶ 97-99; Exhibit B ¶¶ 37-83, 105.)  As a result of Defendant's abuse, Plaintiff has been diagnosed with post-traumatic stress disorder and major depressive disorder, which require psychiatric and psychological care.  (Exhibit B ¶ 105; Declaration of Paola Sandoval-Moshenberg ¶¶ 4-13, attached as Exhibit H.)  To simplify the Court's calculation of damages, Plaintiff claims only $400 a day in emotional damages, which falls below the actually awarded range of emotional damages for trafficking victims held to forced labor, as recognized in *Doe*.  For Plaintiff's 1,083 days spent in forced labor due to trafficking, her total claim for emotional damages is thus $433,200.

Defendant's violations of the TVPA consisted of extreme, outrageous, willful, wanton, and malicious acts, which justify imposition of punitive damages.  (Am. Compl. ¶¶ 58-59; Exhibit B ¶¶ 37-83, 105.)  To simplify the Court's calculation of punitive damages, Plaintiff respectfully requests the Court to impose punitive damages in the same amount as compensatory damages (wages due, medical expenses, and emotional distress damages), totaling $565,179.21.

---

[6] The "full value" of Plaintiff's economic losses as a result of the trafficking and forced labor is, of course, greater than this amount.  However, to simplify the Court's damages calculation, Plaintiff has chosen not to claim them as part of this default judgment.

...

## V. Fraud and Fraudulent Inducement: Plaintiff Repeats Her Claims Only to the Extent Relief Has Not Been Granted.

Defendant committed fraud and fraudulent inducement against the Plaintiff by bringing her to the United States as part of a trafficking scheme, resulting in great economic, emotional, and physical harm to Plaintiff. (Am. Compl. ¶¶ 80-89; Exhibit B ¶¶ 3-17; 105-106.) Defendant's fraud has caused Plaintiff economic and emotional damages, as detailed above in the claims under breach of contract and the TVPA. Plaintiff seeks recovery of that amount as state-law fraud damages only to the extent that the Court has not already granted it as damages under breach of contract or the TVPA.

In Virginia, where the forced labor occurred and whose laws govern the fraud claim,

> Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. They are allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he has acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations. Wilful or wanton conduct imports knowledge and consciousness that injury will result from the act done.

*Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 277 (Va. 1967). Under Virginia law, total punitive damages for any action may not exceed $350,000. *See* Va. Code Ann. § 8.01-38.1.

Defendant's fraud was willful, wanton, conscious, outrageous, in deliberate disregard for the interests of others, and of a character frequently associated with criminal conduct. (Am. Compl. ¶ 87; Exhibit B ¶¶ 37-83, 105-106.) Due to the outrageous character of Defendant's fraud, Plaintiff respectfully requests the Court to impose the maximum $350,000 in punitive damages for the state-law fraud claim only to the extent that the Court has not already granted that amount as punitive damages under the TVPA claim.

### VI. Intentional Infliction of Emotional Distress:  Plaintiff Repeats Her Claims Only to the Extent Relief Has Not Been Granted.

Defendant committed the torts of intentional infliction of emotional distress and negligent infliction of emotional distress against Plaintiff.  (Am. Compl. ¶¶ 91-102; Exhibit B ¶¶ 37-83, 105-106.)  Defendant's infliction of emotional distress was intentional, cruel, repeated, outrageous, and abusive.  (Am. Compl. ¶¶ 97-99; Exhibit B ¶¶ 37-83, 105-106.)  These actions traumatized, depressed, and even drove Plaintiff to consider suicide (Am. Compl. ¶ 38; Exhibit B ¶¶ 37-83, 105-106),  resulting in emotional damages as detailed in the TVPA claim.  Plaintiff seeks to recover those same damages as negligent and intentional infliction of emotional distress damages under Virginia law only to the extent that the Court has not already granted that amount under the TVPA or fraud claim.

To the extent that the Court has not already awarded the full $350,000 in punitive damages permitted by Virginia law for state-law torts, Plaintiff respectfully requests the Court to impose $350,000 in punitive damages for Defendant's intentional infliction of emotional distress.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves this Court to grant Plaintiff's Motion for Default Judgment and to order the Defendant to pay the Plaintiff $565,179.21 in damages.

Respectfully submitted,

Dated:  January 17, 2013        /s/ Julie M. Carpenter
　　　　　　　　　　　　　　　　Julie M. Carpenter
　　　　　　　　　　　　　　　　Carrie F. Apfel
　　　　　　　　　　　　　　　　JENNER & BLOCK LLP
　　　　　　　　　　　　　　　　1099 New York Avenue, NW, Suite 900

Washington, DC  20001
202-639-6600
Attorneys for Plaintiff Virginia Carazani

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January, 2013, a true and accurate copy of Plaintiff Virginia Carazani's Supplement to Plaintiff's Motion for Default Judgment with all accompanying exhibits were served via overnight mail upon the following:

Emma Zegarra
9632 Masterworks Drive
Vienna, VA  22181-6103

/s/ Julie M. Carpenter

Julie M. Carpenter